UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ILYA FELIKSOVICH IOSILEVICH,

                    Plaintiff,                          **REPORT & RECOMMENDATION**
                                                **21 CV 4717 (RPK)(LB)**

    -against-

THE CITY OF NEW YORK, OFFICE OF THE
MAYOR, BILL DE BLASIO,

                    Defendants.
-------------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

       Plaintiff Ilya Feliksovich Iosilevich, proceeding *pro se*, brings this action alleging claims against defendants under a number of federal laws. Defendants move to dismiss plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and for failure to state a claim. The Honorable Rachel P. Kovner referred defendants' motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, I respectfully recommend that defendants' motion should be granted, and plaintiff's Complaint should be dismissed without prejudice.

## BACKGROUND

       On March 1, 2020, the first case of the novel coronavirus ("COVID-19") was confirmed in New York City.[1] Over the following two and a half years, municipal officials enacted numerous rules and regulations aimed at reducing COVID-19 transmission. As part of this effort, on August 16, 2021, then-Mayor Bill de Blasio issued Emergency Executive Order No. 225 ("EEO 225"), which created the "Key to NYC" program. See Emergency Exec. Order No. 225 (Aug. 16, 2021).

---

[1] Joseph Goldstein & Jesse McKinley, *Coronavirus in N.Y.: Manhattan Woman Is First Confirmed Case in State*, N.Y. TIMES, (Mar. 1, 2020), https://www.nytimes.com/2020/03/01/nyregion/new-york-coronvirus-confirmed.html.

Designed to encourage New Yorkers to get one of the approved COVID-19 vaccines, the Key to NYC initiative required, among other things, that patrons of indoor public establishments used for entertainment, recreation, dining or fitness purposes provide proof of vaccination in order to gain entry.[2]

The Key to NYC initiative followed on the heels of the vaccination requirement for newly hired City employees instituted by Executive Order 75 ("EO 75"). Issued by Mayor de Blasio on August 2, 2021, EO 75 states that "[a]ll persons newly hired for employment by any City agency must provide proof of having received at least one dose of an approved COVID-19 vaccine prior to beginning their employment, except for those who obtain an exception due to medical or religious reasons through the reasonable accommodation process." Exec. Order No. 75 § 1 (Aug. 2, 2021). Pursuant to EO 75, newly hired employees who fail to comply or who fail to take a second dose of a two-dose vaccine regimen will be terminated or have their conditional offer of employment revoked. Id. §§ 2, 3.

On March 4, 2022, Mayor Eric Adams, who succeeded Mayor de Blasio, issued Emergency Executive Order 50 ("EEO 50"), which allowed the Key to NYC's proof-of-vaccination requirement for patrons to expire effective one minute after midnight on March 7, 2022.[3] See Emergency Exec. Order No. 50 § 2 (Mar. 4, 2022). The order cites the relaxation of mask

---

[2] While "[i]n the months following August 2021, EEO 225 was superseded, amended, and extended by subsequent emergency executive orders[,]" the proof of vaccination requirement for patrons complained of by plaintiff in the instant proceeding remained essentially unchanged, and therefore this Court shall continue to refer to EEO 225 or the Key to NYC as the subject of plaintiff's challenge throughout this Report and Recommendation. Remauro v. Adams, No. 21 cv 4553, 2022 WL 1525482, at *1 n.2 (E.D.N.Y. May 13, 2022) (noting that "the requirement that most people show proof of vaccination when entering indoor establishments and the mandate that businesses enforce this requirement" created by EEO 225 remained "largely consistent" across subsequent emergency executive orders).

[3] The vaccination requirement for covered workers of covered entities remains in effect. See EEO 50 § 3(a). The Court takes judicial notice of publicly available official health information and executive orders throughout this Report and Recommendation as is permitted on a motion to dismiss. See Jones v. Cuomo, 542 F.Supp.3d 207, 211 n.1 (S.D.N.Y. 2021).

2

mandates, the high vaccination rate among New Yorkers, and the lowered instance of COVID-19 as some of the reasons for ending the proof of vaccination requirement for patrons. Id.

Plaintiff in this case is an unvaccinated resident of New York City. ECF No. 1 (Complaint, "Compl.")[4]. He identifies a litany of harms that the Key to NYC's proof-of-vaccination requirement for patrons ostensibly causes, including that businesses lose income from turning away unvaccinated patrons, id. at 23, and that he personally anticipates sustaining "economic injuries" such as the costs associated with driving "to New Jersey with my girlfriend to dine inside, once I find a job and earn money to take her out."[5] Id. at 60. Plaintiff also states EEO 225 results in a loss of access to his gym and movie theater, to which he had paid membership plans. Id. Further, plaintiff charges that the Key to NYC initiative is discriminatory in a multitude of ways, including that the proof-of-vaccination requirement has a disparate impact on protected groups who plaintiff asserts tend to be unvaccinated,[6] that it violates his religious freedom, *and* that it impermissibly singles out unvaccinated people as a separate class and denies their "fundamental rights to eat inside…." Id. at 15-16; 60.

Plaintiff similarly takes issue with the vaccination requirement for newly hired city employees, specifically EO 75. While plaintiff is not a city employee nor a newly hired city employee, he is "seeking a [*sic*] future employment based on current applications filed with NYC Department of Citywide Administrative Services (DCAS)" and is "expecting to apply for more positions." Compl. at 8. Should he be hired, he will not get vaccinated. Id.

---

[4] As plaintiff has not numbered the pages of his complaint or his opposition, the Court references the ECF page numbers throughout this Report.

[5] Plaintiff states the Key to NYC initiative violates his girlfriend's civil rights in addition to his own. Compl. at 9.

[6] Plaintiff, who is a Jewish immigrant from the former Soviet Union, claims that vaccine mandates are "designed to target population based on protected class of persons of a particular race, color, religion and place of origin" since "realistically speaking majority [*sic*] of unvaccinated persons" include those of his faith and national origin along with "racial minorities." Compl. at 15-16.

In sum, Plaintiff asserts EEO 225 and EO 75 violate a host of federal and state laws and constitutional provisions, including the Religious Freedom Restoration Act of 1993 ("RFRA"), the Equal Protection Clause, the Commerce Clause, the Contract Clause, and Title VII of the Civil Rights Act of 1964. Compl. at 5-6.

Plaintiff further challenges the City's "Return to Office Plan," which, as Plaintiff describes it, requires that "municipal employees get vaccinated, or get tested weekly."[7] Compl. at 27. As noted, while Plaintiff is not a City employee, he alleges his girlfriend is employed by the City, although she is not a plaintiff in this proceeding. Id. at 7. Plaintiff claims the "Return to Office Plan" violates his girlfriend's constitutional and statutory rights.[8] Plaintiff states that he would bear the financial cost—in the form of gas and other travel-related expenses—of his girlfriend using his car to comply with the testing requirement. Id. at 28.

---

[7] Plaintiff states that he has not been able to "find out the applicable section of municipal ordinance or the number of Mayor's Executive Order that addresses such mandate." Compl. at 27. Plaintiff provides a printout of a 311 information page which states that "[b]y September 13, all municipal workers in NYC are required to receive the COVID-19 vaccine or they will need to be tested weekly for COVID-19." Compl. at Ex. B. When last viewed by the Court, the same page instead reads "[a]ll City workers and new hires are required to be vaccinated against COVID-19." *Coronavirus (COVID-19) and City Workers*, NYC 311, https://portal.311.nyc.gov/article/?kanumber=KA-03314 (last visited July 20, 2022).

Liberally construed, plaintiff may be seeking to challenge Executive Order 78, which was issued by Mayor de Blasio in August 2021 and required municipal employees, among others, to get COVID-19 vaccinations, undergo weekly testing, or else face potential discipline. See Exec. Order 78 (Aug. 31 2021). That order was modified by Executive Order 83, issued on October 20, 2021. See Exec. Order 83 (Oct. 20, 2021). In addition, an order issued the same day by the City's Commissioner of Health and Mental Hygiene, Dave A. Chokshi, mandated vaccinations for City employees and eliminated testing as an alternative. See Order of the Comm'r of Health and Mental Hygiene (Oct. 20, 2021); see also Abadi v. New York, No. 21 cv 8071, 2022 WL 347632, at *3 (S.D.N.Y. Feb. 4, 2022) (discussing EO 78 and the subsequent orders impacting City employees). Ultimately, Plaintiff challenges the testing and vaccine requirements imposed on City employees, specifically his girlfriend. However, plaintiff lacks standing to bring these claims. Moreover, plaintiff, who is not admitted to practice law at this juncture, can only bring claims on his own behalf. See, e.g., Iannaccone v. Law, 142 F.3d 553, 558 (2d Cir. 1998) ("[A lay] person may not appear on another person's behalf in the other's cause."); Cheung v. Youth Orchestra Found. of Buffalo, Inc., 906 F.2d 59, 61 (2d Cir. 1990).

[8] Specifically, plaintiff alleges that being required to vaccinate or test to continue employment with the City violates the Due Process Clause of the Federal Constitution, the Equal Protection Clause, the Contract Clause, and New York State's workers compensation law, and is a form of "slavery." Compl. at 6. Plaintiff also asserts violations of related provisions of the state constitution and local law. Id.

4

## PROCEDURAL HISTORY

On August 20, 2021, plaintiff filed the instant *pro se* action against the City of New York, the Office of the Mayor, and then-Mayor Bill de Blasio[9] under 42 U.S.C. § 1983.[10] Compl. at 2-5. On the same date, plaintiff filed an order to show cause seeking a temporary restraining order and a preliminary injunction enjoining the defendants from enforcing Executive Order 75, Emergency Executive Order 225, and the COVID testing requirement for unvaccinated city employees. ECF No. 3. The Honorable Rachel P. Kovner denied plaintiff's request for a preliminary injunction, finding plaintiff failed to show a likelihood of irreparable harm. See Electronic Order dated Aug. 23, 2021. Defendants now move to dismiss plaintiff's Complaint ("Defs' Mot."),[11] plaintiff opposes the motion ("Opp.") and defendants have replied ("Reply").[12] Judge Kovner referred the motion to me for a Report and Recommendation. Electronic Order dated May 9, 2022.

---

[9] On January 1, 2022, Eric Adams became the Mayor of the City of New York. See Emma G. Fitzsimmons, *Eric Adams Takes Office as New York City's 110th Mayor at a Perilous Moment*, N.Y. TIMES, (Jan. 1, 2022), https://www.nytimes.com/2022/01/01/nyregion/eric-adams-inaguration-nyc-mayor.html. Although Bill de Blasio is no longer the mayor, pursuant to Federal Rule of Civil Procedure 25(d), substitution of the new mayor, Eric Adams, is authorized.

[10] The Court notes plaintiff has filed three other *pro se* actions, two of which name the City of New York as a defendant. See Iosilevich v. New York City Administration For Children's Services, No. 22 cv 466(RPK)(LB); Iosilevich v. The City of New York, No. 22 cv 3714(RPK)(LB); and Iosilevich v. Hofstra University, No. 20 cv 5085(LDH)(RER).

[11] On January 12, 2022, defendants served their motion to dismiss pursuant to the District Court's bundling rule. ECF No. 13. As the bundling rule does not apply if a party is proceeding *pro se*, the District Court ordered defendants to file the motion to dismiss on the docket by February 22, 2022 and set a briefing schedule. Electronic Order dated Feb. 18, 2022.

[12] Plaintiff received two extensions to file opposition papers. See Electronic Orders dated Mar. 24, 2022; Apr. 28, 2022. Plaintiff, in his opposition to the motion to dismiss, states that he "will do a Motion [*sic*] requesting leave of the Court to do a supplemental pleading regarding" other executive orders not mentioned in the Complaint, citing two orders issued by Mayor de Blasio on December 13, 2021: EEO 315 (which pertain to Hurricane Ida cleanup) and EEO 316 (which modified the Key to NYC initiative). Opp. at 18. However, no supplemental pleading was filed.

# DISCUSSION

## I.      Standard of Review

A court reviewing a motion to dismiss must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007); Koppel v. 4987 Corp., 167 F.3d 125, 130 (2d Cir. 1999). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, plaintiff must do more than allege facts that are "merely consistent with a defendant's liability," id., or "speculative," Twombly, 550 U.S. at 555. A plaintiff must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). If a plaintiff does not "nudge[] [the] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 570.

Nevertheless, "[a] document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976) (internal citation omitted)); see also Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) ("[w]e liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions 'to raise the strongest arguments they suggest.'" (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) (internal citation omitted)).[13]

In their motion to dismiss, defendants assert that plaintiff lacks standing to challenge EO 75 and the City's "Return to Office" plan because plaintiff is neither a current city employee nor

---

[13] The solicitude afforded pro se litigants does not apply to attorneys proceeding pro se. Here, although plaintiff is not admitted, he states he has passed the bar exam. Opp. at 8.

a newly hired city employee subject to the vaccine mandate. ECF No. 14-1 at 6-7. Defendants

further note that the City's vaccine mandate and others like it have withstood numerous challenges

on grounds identical or similar to those asserted by plaintiff.[14] In their reply papers, defendants

---

[14] Although plaintiff lacks standing for the reasons discussed in this Report, if the Court had jurisdiction to hear the case, defendants' motion to dismiss for failure to state a claim would be successful. Both the Second Circuit "and the Supreme Court have consistently recognized that the Constitution embodies no fundamental right that in and of itself would render vaccine requirements imposed in the public interest, in the face of a public health emergency, unconstitutional." We The Patriots USA, Inc. v. Hochul, 17 F.4th 266, 293 (2d Cir. 2021), opinion clarified, 17 F.4th 368 (2d Cir. 2021), and cert. denied sub nom. Dr. A. v. Hochul, 142 S. Ct. 2569 (2022).

Contrary to plaintiff's assertions, the deferential standard for evaluating vaccine mandates articulated in the Supreme Court's decision in Jacobson v. Massachusetts, 25 S.Ct. 358 (1905), remains good law. "Federal courts across the country have upheld state and local COVID-19 restrictions based upon the Supreme Court's analysis in Jacobson." Our Wicked Lady LLC v. Cuomo, No. 21 cv 165, 2021 WL 915033, at *3 (S.D.N.Y. Mar. 9, 2021). In Dixon v. De Blasio, the Court held that the Key to NYC initiative likely satisfies the Jacobson standard as it does not actually mandate universal vaccination, and the restrictions placed on unvaccinated individuals are not arbitrary. 566 F.Supp.3d 171, 185 (E.D.N.Y. 2021), vacated on other grounds by 21 cv 2666, 2022 WL 961191 (2d Cir. Mar. 28, 2022). The Court notes that while the De Blasio decision was vacated as moot—an outcome which underscores this Report's conclusion that plaintiff's challenge is moot (see Section IV, infra)—the decision's reasoning and analysis of EEO 225 remains persuasive.

Further, in Dixon, the Court rejected the argument now advanced by plaintiff that the Key to NYC initiative is preempted by the Food, Drug, and Cosmetic Act ("FDCA"). In so finding, the Dixon court noted that the Key to NYC initiative affords individuals the ability to remain unvaccinated because it does not "criminalize an individual's choice to refuse a vaccine…." Id. at 190.

Plaintiff's equal protection arguments are also without merit. An individual's vaccination status is not considered a protected class subject to strict scrutiny under the Equal Protection Clause. Dixon, 566 F.Supp.3d at 179-80. Further, differential vaccination rates among certain groups does not render the challenged regulations discriminatory, and plaintiff fails to plausibly allege any discriminatory animus motivating the regulations such that strict scrutiny is appropriate. Id. at 180-81. Additionally, multiple courts have found the Key to NYC initiative likely satisfies rational review. Id. at 182; see also Clementine Company LLC. v. De Blasio, No. 21 cv 7779, 2021 WL 5756398, at *15-16 (S.D.N.Y. Dec. 3, 2021) (finding Key to NYC likely survives rational review under the Equal Protection Clause). For similar reasons, plaintiff fails to state a claim under both Title II and Title VII of the Civil Rights Act of 1964 (both provisions are referenced in the Complaint). See Am. Italian Women for Greater New Haven v. New Haven, No. 21 cv 01401, 2022 WL 1912853, at *6 (D. Conn. June 3, 2022); Akyar v. TD Bank US Holding Co., No. 18 cv 379, 2018 WL 4356734, at *5 (S.D.N.Y. Sept. 12, 2018); Coward v. Town and Village of Harrison, 665 F. Supp. 2d 281, 303-7 (S.D.N.Y. 2009).

Plaintiff also fails to state a claim under the Contract Clause. Plaintiff does not allege any language from the asserted contractual relationships that are impaired by the vaccine mandates. In any event, courts afford substantial deference to government regulations that impact private contracts and have upheld those that respond to the COVID-19 crisis. See Elmsford Apt. Assocs. LLC v. Cuomo, 469 F.Supp.3d 148, 173 (S.D.N.Y. 2020) (holding COVID eviction moratorium does not violate Contracts Clause), appeal dismissed sub nom by 36 Apartment Assocs., LLC v. Cuomo, 860 F. App'x 215 (2d Cir. 2021); see also Buffalo Teachers Fed'n v. Trobe, 464 F.3d 362, 368-69 (2d Cir. 2006). Plaintiff does not allege facts plausibly demonstrating that his gym and movie memberships, even if they are contractual relationships, should "trump the police power of a state to protect the general welfare of its citizens…." Elmsford Apt. Assocs. LLC, 469 F.Supp.3d at 168 (internal quotation marks omitted).

also note the Key to NYC's proof-of-vaccination requirement for patrons expired during the pendency of this lawsuit and therefore argue that plaintiff's Complaint should be dismissed as moot. Reply at 1-4. Id. For the reasons discussed below, defendants' motion to dismiss should be granted and plaintiff's claims should be dismissed without prejudice.[15]

---

Plaintiff's Complaint does not state a claim under the Dormant Commerce Clause. The challenged policies operate within New York's borders and do not target out-of-state individuals or entities for differential treatment. See Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 216-217 (2d Cir. 2004). Plaintiff does not plausibly allege burdens on interstate commerce, relying instead on hypothetical and vague claims that the challenged policies will cause traffic congestion and road deterioration. Opp. at 22. See Plaza Motors v. Cuomo, No. 20 cv 4851, 2021 WL 222141, at *7 (E.D.N.Y. Jan. 22, 2021) (finding plaintiffs unlikely to succeed in challenge to COVID-19 executive orders brought on commerce clause grounds).

Plaintiff cannot bring a claim under Health Insurance Portability and Accountability Act (HIPPA) because "there is no private right of action under HIPAA...." Moussa v. Sullivan, No. 22 cv 3709, 2022 WL 2906177, at *3 (E.D.N.Y. July 22, 2022) (citing Meadows v. United Servs., Inc., 963 F.3d 240, 244 (2d Cir. 2020)). "Courts presented with the issue also have held that, because HIPAA does not create a private right, it cannot be privately enforced via Section 1983." O'Neil v. Bebee, No. 9 cv 1133, 2010 WL 502948, at *9 fn.17 (N.D.N.Y. Feb. 10, 2010); see also Scholosser v. Kwak, 16 F.4th 1078, 1081-82 (2d Cir. 2021) (discussing the difference between federal rights enforceable via Section 1983 and federal laws that are not). In any event, the challenged regulations do not mandate the disclosure of private health information. And even assuming plaintiff could enforce the Nuremberg Code or the Declaration of Helsinki through a Section 1983 claim, the challenged policies do not constitute and are in no way equivalent to forced medical experimentation. See Johnson v. Tyson Foods, Inc., No. 21 cv 1161, 2022 WL 2161520, at *10 (W.D. Tenn. June 15, 2022) (collecting cases).

With regard to plaintiff's Religious Freedom Restoration Act (RFRA) claim, "the Supreme Court has invalidated RFRA as applied to States and their subdivisions." Ross v. Aramark Corp., No. 18 cv 2246, 2019 WL 1172383, at *7 (S.D.N.Y. Mar. 13, 2019) (internal quotation marks omitted); City of Boerne v. Flores, 521 U.S. 507, 532–36 (1997). Nor does plaintiff plausibly allege a violation of RFRA because he does not "demonstrate that [he] sought to engage in the exercise of religion and that the [the challenged policy] substantially burdened that exercise." Sabir v. Williams, 37 F.4th 810, 818 (2d Cir. 2022). Plaintiff does not state why his own personal religious beliefs prohibit vaccination or how his beliefs are substantially burdened by the challenged policies. See also Dixon, 566 F.Supp.3d at 183 (plaintiffs not likely to succeed in Free Exercise challenge to EEO 225).

Finally, the Supreme Court's decision in Nat'l Fed'n of Indep. Bus. v Dep't of Labor is not relevant to whether the City's vaccine mandate is unconstitutional or unlawful. The decision in Nat'l Fed'n hinged on whether the Occupational Safety and Health Administrations ("OSHA"), a federal administrative agency, exceeded its congressional grant of authority when issuing a vaccine mandate—a question that obviously has no bearing on this proceeding. As the defendants convincingly argue, the Mayor does have the authority to create the Key to NYC initiative. See Bravo v. De Blasio, 75 Misc. 3d 373, 384-85 (Sup. Ct. Kings. Cty. 2022).

[15] Dismissal for lack of Article III subject matter jurisdiction is without prejudice. See Liu v. United States Congress, 834 Fed.Appx. 600, 606 (2d Cir. Oct. 28, 2020) (summary order); Hernandez v. Conriv. Realty Associates, 182 F.3d 121, 123-24 (2d. Cir. 1999) ("[W]e hold that, because the district court lacked subject matter jurisdiction, it did not have the power to dismiss the complaint with prejudice.").

## II.     Plaintiff Lacks Standing to Bring Claims Against EO 75

### A. Standing

"Under Article III of the U.S. Constitution, '[t]he judicial Power of the United States" extends only to certain 'Cases' and 'Controversies.'" Lacewell v. Off. of Comptroller of Currency, 999 F.3d 130, 141 (2d Cir. 2021) (quoting U.S. Const. art III §§ 1–2). "To satisfy the Constitution's 'case-or-controversy requirement,' a plaintiff in federal court 'must establish that they have standing to sue.'" Id. (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013)). The doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (citations omitted). Standing is, therefore, "the threshold question in every federal case, determining the power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 498 (1975).

"[T]he irreducible constitutional minimum of standing contains three elements." Lujan v. Defenders Of Wildlife, 504 U.S. 555, 560 (1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc., 578 U.S. at 338 (citing Lujan, 504 U.S. at 560-561).

"The party invoking federal jurisdiction bears the burden" of establishing standing. Lujan, 504 U.S. at 561. "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly … allege facts demonstrating' each element" of standing's three elements. Spokeo, Inc., 578 U.S. at 338 (2016) (quoting Warth, 422 U.S. at 518). When a defendant challenges standing "based on the allegations in the complaint and exhibits attached to it" the Court will "accept as true all material allegations of the complaint, and draw all reasonable inferences in favor of the plaintiff." Carlone v. Lamont, No. 21 cv 871, 2021 WL 5049455, at *1 (2d Cir. Nov. 1, 2021) (summary order)

(quoting <u>Lacewell</u>, 999 F.3d at 140).[16] A plaintiff must "demonstrate standing for each claim and form of relief sought," <u>Cacchillo v. Insmed, Inc.</u>, 638 F.3d 401, 405 (2d Cir. 2011) (internal quotation marks omitted), by alleging *facts*, not merely conclusory allegations. <u>Carlone</u>, 2021 WL 5049455, at *2-3.

The injury in fact requirement is "first and foremost" among standing's three elements. <u>Spokeo, Inc.</u>, 578 U.S. at 338 (internal quotation marks omitted). An injury in fact consists of "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." <u>Lujan</u>, 504 U.S. at 560 (internal quotation marks omitted) (citations omitted). A harm is "concrete" if it actually exists and is "particularized" if it affects the plaintiff personally and individually. <u>Spokeo, Inc.</u>, 578 U.S. at 339-40. An "actual" injury is one that has already occurred, while a plaintiff seeking to show an injury is "imminent" must demonstrate that the harm is "certainly impending," <u>Clapper</u>, 568 U.S. at 409 (internal quotation marks omitted), or that there is a "substantial risk the harm will occur."[17] <u>Susan B. Anthony List v. Driehaus</u>, 573 U.S. 149, 158 (2021) (internal quotation marks omitted); <u>see also</u> <u>Lacewell</u>, 999 F.3d at 141.

A plaintiff cannot establish a harm is "imminent" through bare allegations "of possible future injury" contingent on a "highly attenuated chain of possibilities." <u>Clapper</u>, 568 U.S. at 409-10 (internal quotation marks omitted). Consequently, a plaintiff's standing argument is "undermined" by a complaint that "repeatedly couches" an "alleged injury in conditional or future-oriented terms." <u>Lacewell</u>, 999 F.3d at 144. And indeed, in <u>Faculty, Alumni, & Students Opposed</u>

---

[16] The Clerk of the Court is respectfully directed to send plaintiff the attached copies of all unreported cases cited herein.

[17] This is consistent with the Supreme Court's longstanding rule that "a grievance that amounts to nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law does not count as an 'injury in fact.' And it consequently does not show standing." <u>Carney v. Adams</u>, 141 S.Ct. 493, 498 (2020) (citing <u>Hollingsworth v. Perry</u>, 570 U.S. 693, 704 (2013)).

to Racial Preferences v. New York University, the Second Circuit dismissed a lawsuit brought against New York University ("NYU") that challenged as discriminatory the article-selection practices of the NYU Law Review ("Law Review") and the hiring practices of the Law School in general. 11 F.4th 68, 73-74 (2d Cir. 2021), *cert. denied*, No. 21 cv 1046, 2022 WL 2111369 (June 13, 2022). The plaintiffs alleged that they sought faculty positions at the Law School in the past, intended to "remain candidates for recruitment to the faculty," and would continue to apply for jobs and submit scholarship to the Law Review. Id. at 73-74; 77. The Second Circuit held the plaintiffs' intentions failed to show an actual or imminent injury given the "uncertain future action that would need to occur before the plaintiffs could arguably suffer the harm alleged." Id. at 77; see also Doe v. McSweeney, No. 21 cv 2191, 2022 WL 1451383, at *2 (2d Cir. May 9, 2022) (summary order) (holding plaintiff lacks standing to challenge laws criminalizing and prohibiting incestuous marriage because he has neither proposed marriage to a family member nor had his proposal been accepted).

### B.  Plaintiff Does Not Plead an Injury-in-Fact

Plaintiff asserts that he will suffer an injury by way of an adverse employment action when the City revokes his future offer of employment as a result of EO 75.[18] Plaintiff, who is not a City employee, has "applied for several positions" with the City since 2018 and "will continue to apply for future employment opportunities with the City." Compl. at 34; 36. His injury, then, is that "if hired" to some unspecified position, his offer of employment would be revoked upon his refusal to get vaccinated based on a policy that is unconstitutional and unlawful.[19] Id. at 8.

---

[18] The Court construes plaintiff's Complaint as seeking both injunctive relief to halt enforcement of EO 75 and declaratory relief holding EO 75 unconstitutional. Compl. at 39 (asking the court to "find Executive Order 75 to be unconstitutional").

[19] Plaintiff's alleged injury is *not* a failure to be given equal consideration for an offer of employment by the City on account of his status as unvaccinated. Rather, his injury is that once he is offered employment, he "won't be able to take it because the Mayor created a disability for me – which is the vaccination requirement." Compl. at 37. And on

This speculative harm does not constitute an "actual or imminent" injury sufficient to establish standing. In short, plaintiff is not injured by the City's vaccine mandate for newly hired employees because he is not newly hired, nor does he show his employment is anything other than purely hypothetical. See Hollis v. Biden, No. 21 cv 163, 2021 WL 5500500, at *5 (N.D. Miss. Nov. 23, 2021) ("Because the plaintiffs have failed to adequately show that they are or will become covered" by a federal vaccine mandate for employees of federal contractors and have not sought an exemption "the Court cannot find" that the policies "have caused Plaintiffs any actual or imminent injury that is fairly traceable to the Defendants' actions."); see also Global Network Communications Inc. v. City of New York, 562 F.3d 145, 152 (2d Cir. 2009) (holding plaintiff lacked standing to challenge regulatory scheme applicable to licensed entities because plaintiff "had no license to operate" and so "was not affected" by the scheme).

Instead, Plaintiff's Complaint couches his harm in "conditional or future-oriented terms" regarding the possibility of future employment, Lacewell, 999 F.3d at 144, while including no facts demonstrating that an offer of employment (and therefore enforcement of EO 75 against him) is anything other than speculative, let alone "certainly impending." Clapper, 568 U.S. at 409. And indeed, plaintiff's injury hinges on a significant contingency: he must not only apply for

___

its face, EO 75 states "[a]fter receiving a conditional offer of employment from a City agency, an applicant for employment must provide proof of having received at least one dose of an approved COVID-vaccine within a reasonable period of time" or receive an exception. EO 75 § 2 (emphasis added). If plaintiff is never offered City employment, EO 75 will not apply to him.

Plaintiff's claim is therefore distinct from cases in which the plaintiff asserts that a "discriminatory classification" prevents him from "competing on an equal footing" for some benefit, Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 211 (1995) (internal quotation marks omitted), or where the plaintiff's harm is similarly that some unlawful criteria prevents him from being "considered" for a certain government position. Carney, 141 S.Ct. at 499-500. In those cases—sometimes known as "barrier cases"—the injury stems not from the ultimate denial of the sought benefit, but rather from being made to participate in a discriminatory or otherwise unlawful process. Id. at 502-03; see also Northeastern Fla. Chapter, Associated Gen. Contractors of America v. Jacksonville, 508 U.S. 656, 667-68 (discussing the difference between injuries stemming from an unfair process and injuries rooted in the ultimate denial of a benefit) (quotations omitted) (citations omitted); Roberts v. Basset, No. 22 cv 710, 2022 WL 785167 at *6 (E.D.N.Y. Mar. 15, 2022) (noting that the injury in barrier cases must still be imminent or certainly impending). In any event, as discussed in footnote fourteen, supra, vaccination status is not a discriminatory classification.

12

employment, but his application must be accepted by a City agency. See McSweeney, 2022 WL 1451383, at * 2. Plaintiff's injury, therefore, turns on "uncertain future action." Faculty, 11 F.4th at 77. True, plaintiff claims that he knows "with a high probability of certainty" that he will "get at least one of the jobs for which [he] applied." Opp. at 8. But this allegation "simply states a conclusion … unaccompanied by any supporting factual allegations," rendering it insufficient to establish an injury-in-fact.[20] Carlone, 2021 WL 5049455, at *2. Plaintiff cannot manufacture standing to challenge EO 75 based entirely on the threadbare allegation that he applied for several unspecified jobs and plans to do so again.[21]

### C.  Plaintiff Has Not Applied for an Exception

In addition, the general rule is that "to establish standing to challenge an allegedly unconstitutional policy, a plaintiff must submit to the challenged policy." Jackson-Bey v. Hanslmaier, 115 F.3d 1091, 1096 (2d Cir. 1997); see also Doe v. Blum, 729 F.2d 186, 189-90 (2d Cir. 1984) (holding plaintiffs lack standing to bring statutory and constitutional claims based on denial of family planning services as plaintiffs did not seek and were not denied said services). An exception exists if the plaintiff shows that submitting to the challenged policy is an exercise in futility because the outcome is inevitable. See Winston v. Syracuse, 887 F.3d 553, 559 (2d Cir. 2018) (holding plaintiff had standing to bring constitutional challenge to city's water shutoff policy

---

[20] Plaintiff states that he does not want to be "prevented from getting a job merely because I am unvaccinated absent other grounds of disqualifications." Opp. at 8. Plaintiff further asserts he has passed the Uniform Bar Exam and will seek employment with New York City's Law Department. Id. Passing the bar does not mean that plaintiff's application for employment with the Law Department is "certainly impending" or substantially likely. Moreover, plaintiff was not seeking employment with the Law Department at the time he filed this proceeding. See Ali v. New York City Env't Control Bd., 670 F. App'x 26, 27 (2d Cir. 2016) (summary order) ("Standing is determined based on the litigant's position at the time he filed the complaint."); see also Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 189-91.

[21] Plaintiff, in opposition, argues that "if the Court determines that I lack standing at this time, then the moment I am offered a position at the City agency, the harm will transform into 'actual or imminent harm'…." Opp. at 8. But this does not help plaintiff: a harm that becomes "actual or imminent" only if some future event occurs is neither actual nor imminent.

without requesting a termination hearing because the hearing was incapable of affording her relief).

Applying this rationale, the Court in Wade v. University of Connecticut Board of Trustees dismissed a plaintiff's challenge to her university's vaccine mandate because she "failed to apply for an exemption as the policy expressly allows her to do" and similarly failed to argue such an application would be futile. 554 F.Supp.3d 366, 377-78 (D. Conn. 2021); cf. Marciano v. De Blasio, No. 21 cv 10752, 2022 WL 678779, at *5 (S.D.N.Y. Mar. 8, 2022) (finding police officer had standing to challenge municipal vaccine mandate because evidence in the record strongly suggested that his accommodation request would be denied). Here, EO 75 does not apply to plaintiff because he is not a newly hired employee. Even if he could show he would imminently be subject to the City's vaccine mandate for new employees, he would still lack standing to challenge the policy as he would need to first avail himself of the exception process built into EO 75 or plead facts demonstrating the futility of seeking such an exception. Wade, 554 F.Supp.3d at 377-78.

In sum, plaintiff fails to demonstrate he has standing to challenge EO 75. He is not a newly hired employee subject to the mandate, nor has he plausibly alleged that his City employment is anything other than hypothetical. Further, if plaintiff was a City employee he would have to apply for an exception as provided by EO 75, and his Complaint fails to allege facts showing that seeking an exception would be futile. Although plaintiff feels "sincerely and strongly" that EO 75 does not "comply with the Federal Constitution" as well as federal and state law, "that kind of interest does not create standing." Carney v. Adams, 141 S.Ct. 493, 499 (2020). Therefore, defendant's motion to dismiss plaintiff's claims challenging EO 75 should be granted.

III.    **Plaintiff Lacks Standing to Challenge the City's "Return to Office" Policy**

Plaintiff also lacks standing to challenge the City's "Return to Office" policy.[22] Plaintiff fails to demonstrate that he suffered an "injury in fact" as a result of the plan and, further, plaintiff fails to plausibly allege that his girlfriend—who is not a party to this proceeding—is prevented from vindicating her own rights.

A.  **Third-Party Standing**

The general rule is that a plaintiff lacks standing to assert the rights of another in federal court. See Singleton v. Wulff, 428 U.S. 106, 113 (1976) ("Federal courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation."). This broad prohibition is "designed to minimize unwarranted intervention into controversies where the applicable constitutional questions are ill-defined and speculative." Craig v. Boren, 429 U.S. 190, 193 (1976). Courts recognize a prudential exception, known as third party standing, if the plaintiff "asserting the right has a close relationship with the person who possesses the right" and "there is a hindrance to the possessor's ability to protect his own interests." Sessions v. Morales-Santana, 137 S.Ct. 1678, 1689 (2018) (citing Kowalski v. Tesmer, 543 U.S. 125, 130 (2004)). Additionally, courts consider whether the plaintiff is the "obvious claimant" and the "best available proponent" of the right holder's interests. Id. (internal quotation marks omitted). This test serves to ensure federal courts do not hear claims by a plaintiff who seeks "to vindicate only his own rights, and the rights of the

---

[22] Plaintiff cannot challenge the City's "Return to Office" policy as violating the statutory and constitutional rights of his girlfriend, a City employee subject to the rules. As a non-attorney *pro se* litigant, plaintiff is limited to pleading and conducting his *own* cases. Iannaccone v. Law, 142 F.3d 553, 558 (2d Cir. 1998). It is well-established that "an individual who is not licensed as an attorney 'may not appear on another person's behalf in the other's cause.'" Machadio v. Apfel, 276 F.3d 103, 106 (2d Cir. 2002) (quoting Iannaccone, 142 F.3d at 558).

third party are merely incidental." <u>Camacho v. Brandon</u>, 56 F.Supp.2d 370, 375 (S.D.N.Y. 1999). <u>See also</u> <u>Singleton</u>, 428 U.S. at 114-17.

Critically, "in order to claim the interests of others, [a litigant] still must have suffered an injury in fact, thus giving them a sufficiently concrete interest in the outcome of the issue in dispute." <u>Thole v. U.S. Bank</u>, 140 S. Ct. 1615, 1620 (2020) (internal quotation marks omitted). <u>See also</u> <u>Craig</u>, 429 U.S. at 196-97 (vendor has standing to challenge statute prohibiting selling alcohol to underage men on the basis the statute violates the rights of her patrons as those rights are bound to hers under the law).

### B.  Plaintiff Does Not Demonstrate an Injury-in-Fact

Plaintiff stumbles at every hurdle. As an initial matter, the "Return to Office" plan has not caused plaintiff an "injury-in-fact." As noted previously, an injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized" and "(b) actual or imminent, not conjectural or hypothetical." <u>Lujan</u>, 504 U.S. at 560-61 (internal quotation marks omitted) (citations omitted). Even though plaintiff alleges that the "Return to Office" plan violates his girlfriend's rights,[23] plaintiff asserts a personal collateral economic injury: he will bear the costs (paying for gasoline, etc.) of his girlfriend using his car to drive to a testing site as required by the "Return to Office" plan for City employees who are not vaccinated. Compl. at 61. In other words, plaintiff alleges that enforcement of the "Return to Office" plan against his girlfriend injures him

---

[23] Specifically, plaintiff asserts the "Return to Office" plan violates the Constitution's Contract Clause, as well as his right to equal protection and due process. Compl. at 29-31. Plaintiff also claims that requiring testing during work hours without compensation violates New York Labor Law. <u>Id.</u> at 32. Plaintiff further alleges that requiring testing without compensation amounts to "slavery" and creates two unequal classes of employees—the vaccinated and the unvaccinated. <u>Id.</u> at 29-30.

economically.[24] In theory, a monetary loss is the quintessential injury-in-fact.[25] <u>Carlone</u>, 2021 WL 5049455, at *2.

Here, however, plaintiff's economic injuries are not concrete because they do not exist. <u>Spokeo Inc.</u>, 578 U.S. at 340 (noting that to be concrete, the injury "must actually exist"). Plaintiff states that when he filed his Complaint he "was under [*sic*] impression that [his girlfriend] had to undergo weekly testing on her own time…." Opp 6. He "discovered, however, that her employer requires her to get tested at the worksite on job time.[26] <u>Id.</u> at 7. Thus, plaintiff admits that the "Return to Office" policy caused him no concrete injury, no economic loss. Plaintiff maintains the Court can still hear his claims against the "Return to Office" policy because "[d]efendants can reenact a new regulation or policy requiring my girlfriend to get weekly testing on her free time and at own [*sic*] expense."[27] <u>Id.</u> But this conclusory and speculative statement does not demonstrate that such a policy is actual or imminent.

### C. Hindrance and Third Party Standing

Even assuming that plaintiff were to show an injury in fact and the "close relationship" required for third party standing, he fails to provide an adequate justification for why his

---

[24] Plaintiff's claim to standing therefore inverts that of the typical third-party standing case, in which "enforcement of the challenged restriction *against the litigant* would indirectly result in the violation of third parties' rights." <u>Kowalski v. Tesmer</u>, 543 U.S. 125, 130 (2004) (internal quotation marks omitted). The Supreme Court has "not looked favorably" upon recognizing third-party standing if the plaintiff is only indirectly harmed by enforcement of the challenged policy, as is the case here. <u>Id.</u>

[25] Plaintiff also alleges the "Return to Office" plan causes an injury to his "familial relations" because he and his girlfriend would lose the time she is required to take tests which could be used to "build[] our emotional attraction to each other…." Opp. at 6. Plaintiff's familial injury is less recognized and suffers from all the same deficiencies as his alleged economic injury.

[26] "A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." <u>Walker v. Schult</u>, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

[27] Plaintiff asserts his claim is not "moot" for this reason, Opp. at 7. A case becomes moot only if the plaintiff initially had standing to bring the suit. As plaintiff here does not have standing to challenge the "Return to Office" plan, mootness is not the issue.

girlfriend—a municipal employee directly impacted by the plan and therefore the obvious claimant—faces a hinderance asserting her own rights. [28] Plaintiff alleges that "she is afraid of retaliation by her municipal employer," Opp. at 6, and under some circumstances the prospect of retaliation against a rights holder can establish a hinderance to their bringing litigation on their own behalf. See Camacho v. Brandon, 317 F.3d 153, 160 (2d Cir. 2003) (lack of economic harm to the rights holder combined with "the possibility that instituting litigation on his own behalf may only incur further retribution" is a hinderance). But an assertion of fear of retribution that "is merely conclusory and lacks supporting allegations detailing why, exactly," the rights holder is afraid is wholly insufficient. Staten v. Village of Monticello, No. 14 cv 4766, 2015 WL 6473041, at *7 (S.D.N.Y Oct. 26, 2015) (finding husband lacked standing to assert his wife's rights. The conclusory claim she faced "intimidation" by defendants if she brought suit herself did not demonstrate a hinderance) (citing Mazzocchi v. Windsor Owners Corp., No. 11 cv 7913, 2012 WL 3288240, at *5 (S.D.N.Y. Aug. 6, 2012) (finding conclusory assertion by plaintiff that third party's mental illness hinders her ability to bring a claim herself does not establish standing)).

Plaintiff provides no facts to support his girlfriend's belief that defendants in this action will retaliate against her for challenging the "Return to Office" policy. The Court has no reason to believe plaintiff's girlfriend's lack of participation in this suit "more likely stems from disability than from disinterest." Miller v. Albright, 523 U.S. 420, 450 (1998) (O'Connor, J., concurring).

Moreover, Plaintiff admits he is unaware of what policy he is challenging when he challenges the City's "Return to Office" plan and that he was in any event mistaken as to the requirements of the plan. Compl. at 27; Opp. at 6-7. It is possible that plaintiff is still mistaken as

---

[28] The Court need not consider whether the parties have a "close relationship."

18

to the vaccination and testing requirements for City employees.[29]  Plaintiff's confusion goes to the heart of why he lacks standing and why the Court cannot hear his claims. As plaintiff is not subject to the challenged policy, he is not fully abreast of what the City requires of employees, and the result is that the "applicable constitutional questions" in this lawsuit "are ill-defined and speculative." Craig, 429 U.S. at 193. Therefore plaintiff is not "as effective a proponent" as his girlfriend, who is more likely to know the contours of a policy to which she, herself, is subject. Singleton, 428 U.S. at 115.

## IV.    Plaintiff's Claims Against EEO 225 (the Key to NYC Initiative) are Moot

## A.  Mootness

As discussed above, federal court jurisdiction is strictly limited by Article III, § 2 of the Constitution to cases and controversies in which the litigant has a personal stake. "A corollary to this case-or-controversy requirement is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 71 (2d Cir. 2013) (internal quotation marks omitted). "A live controversy remains as long as 'a court can fashion *some* form of meaningful relief' to award the complaining party, and even '[t]he availability of [a] *possible* remedy is sufficient to prevent [a] case from being moot.'" Exxon Mobil Corp. v. Healey, 28 F.4th 383, 392 (2d Cir. 2022) (quoting Church of Scientology v. United States, 506 U.S. 9, 12-13 (1992)). Where the "relief sought can no longer be given or is no longer needed" the case or controversy is considered "moot." Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir. 1983); see also Remauro v. Adams, No. 21 cv 4554, 2022 WL 1525482, at *3 (E.D.N.Y. May 13, 2022).

---

[29] As discussed previously, see footnote seven, *supra*, City employees may no longer be able to opt-out of vaccination without first securing an exception from the policy.

When plaintiff filed his Complaint seeking to enjoin the Key to NYC initiative on numerous grounds, the complained-of vaccine requirement for patrons of public establishments was in effect. But Mayor Adams allowed that provision to expire on March 7, 2022, see EEO 50, and as plaintiff himself admits, to the best of his knowledge, "the City no longer requires business owners to check for the vaccination status" of patrons. Opp. at 7. "Because the patron-specific rule has expired," the claims plaintiff brings in his capacity as a patron "are moot." Remauro, 2022 WL 1525482, at *3 (E.D.N.Y. May 13, 2022) (finding EO 50 mooted challenge to Key to NYC's vaccine mandate for patrons). In other words, the injunctive relief sought by plaintiff "is no longer needed" because the Key to NYC's vaccine mandate for patrons is no longer in effect. Martin-Trigona, 702 F.2d at 386. While plaintiff asks this Court to still "determine whether the Key to NYC is constitutional," a request for a declaratory judgment, standing alone, does not reanimate an otherwise moot claim into a live case or controversy.[30] See Remauro, 2022 WL 1525482, at *2 n.5 (citing Exxon Mobil Corp., 28 F.4th at 394–95).

**B. Exceptions to the Mootness Doctrine**

The mootness doctrine is subject to multiple exceptions, two of which are relevant to the instant proceeding. First, an otherwise moot case will not be dismissed if the dispute is "capable of repetition, yet evading review." Van Wie v. Pataki, 267 F.3d 109, 113 (2d Cir. 2001) (internal quotation marks omitted). "A dispute qualifies for that exception only if (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." Reale v. Lamont, No. 20 cv 3707, 2022 WL 175489, at *1 (2d Cir. Jan. 20, 2022) (summary order)

---

[30] To the extent plaintiff lists monetary harms caused by the Key to NYC initiative, these allegations do not keep the case alive. Compl. at 63-64. See Remauro, 2022 WL 1525482, at *4 (citing Fox v. Bd. of Trs. of State Univ. of N.Y., 42 F.3d 135, 141–42 (2d Cir. 1994)).

(quoting and citing United States v. Sanchez-Gomez, 138 S. Ct. 1532, 1540 (2012)). A dispute will be considered capable of repetition yet evading review only in "exceptional situations." Kingdomware Technologies, Inc. v. United States, 579 U.S. 162, 170 (2016) (internal quotation marks omitted). Mere speculation by the complaining party does not create a "reasonable expectation" that he will again be subjected to the challenged policy. See Exxon Mobile Corp., 28 F.4th. at 396 (collecting cases finding that speculation as to the possible reoccurrence of a dispute does not amount to a "reasonable expectation"); Remauro, 2022 WL 1525482, at *4 (noting that a "speculative assertion of what defendants could do is not enough to satisfy the capable of repetition exception to mootness").

Plaintiff argues that his claims against the vaccine requirement for patrons are "not moot at this point because if new [sic] virus emerges, the City will reenact this program" and he will be subject to the same vaccine requirement he now challenges.[31] Opp. at 7 Defendants counter, first, by arguing that there is no reasonable expectation that the City will resuscitate the vaccine mandate for patrons because "the goal it was intended to further"—encouraging vaccinations—"has largely been met," as evinced by high vaccination rates among young adults.[32] Reply at 5. This, defendants assert, "combined with the decreasing levels of severe illness" from COVID-19, demonstrate there is no reasonable expectation the Key to NYC's vaccine requirements for patrons will be revived. Id. at 4-5. Secondly, defendants argue that even if the vaccine mandate were reimposed, there is

---

[31] Plaintiff also alleges third party standing to challenge Key to NYC, once reenacted, "on behalf of small business owners, employees and friends" who are aggrieved by the vaccine requirement for patrons. Opp. at 7; see also Compl. at 23-24. As the vaccine requirement no longer applies to patrons, the Court need not reach the issue of whether plaintiff could have third party standing on behalf of other entities. As discussed in footnote twenty, supra, pro se parties can only assert their own claims.

[32] Defendants partially frame their mootness arguments in terms of whether the plaintiff is under "constant threat" of reinstatement of the vaccine mandate for patrons. Reply 4. Defendants argue that there is no reasonable expectation the Key to NYC's vaccine mandate will be reinstated.

no reason to believe it would "evade review," citing the numerous court decisions addressing the Key to NYC while the initiative was in effect. Id. at 4.

Plaintiff's claims against the Key to NYC initiative do not fall within the "capable of repetition yet evading review" exception. During the early months of the COVID-19 pandemic, government officials issued, modified, rescinded, and reissued an array of restrictions in an effort to control the spread of the disease. Courts often hesitated to declare challenges to pandemic restrictions moot even if the complained-of policy ceased to apply to the plaintiff given the frequency with which regulations changed and the inherent difficulty of determining that such restrictions were unlikely to reoccur amid a volatile pandemic. See Roman Catholic Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63, 68 (2020) (finding challenge to state executive order limiting gathering numbers at places of worship is clearly not moot as the scope of the restrictions shifted regularly); Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons, 954 F.3d 118, 126-28 (2d Cir. 2020); Jones v. Cuomo, 542 F.Supp.3d 207, 215-16 (S.D.N.Y. 2021).

However, more than two years after the pandemic began, "circumstances have changed," Eden, LLC v. Justice, 36 F.4th 166, 171 (4th Cir. 2022), and wholesale rollbacks of loosened COVID-19 rules are increasingly hard to envisage. Given this, plaintiff's barebones contention that the City will reinstitute the vaccine mandate for indoor dinging and gym patrons if a new virus emerges is entirely speculative and therefore "not enough to satisfy the capable of repetition exception to mootness." Remauro, 2022 WL 1525482, at *4 (collecting cases).

Moreover, to the extent plaintiff is arguing that increased levels of COVID-19 will prompt the reimposition of the Key to NYC's vaccination requirement for patrons, his contention is undermined by the fact that Mayor Adams has not reinstated the mandate even as the seven-day average of confirmed and probable COVID-19 in New York City has risen significantly after

March 7, 2022, when the mandate was permitted to expire.[33] <u>See</u> <u>Reale</u>, 2022 WL 175489, at *1 (plaintiff's assertion that the state will reimpose challenged COVID-19 "restrictions once COVID-19 numbers increase … is disproved" by the fact the state "has not reimposed restrictions despite the recent spike in cases"). In any event, New York City is not in the habit of "regularly" changing whether patrons must show proof of vaccination to access public spaces. <u>See</u> <u>Roman Catholic Diocese</u>, 141 S. Ct. at 68. Further, as defendants point out, the Key to NYC program has largely succeeded in encouraging vaccinations, a goal that is not impacted by changing COVID-19 infection rates. Reply at 4.

Plaintiff's claims similarly do not fall within the second relevant exception to the mootness doctrine: voluntary cessation of challenged conduct. "The voluntary cessation of allegedly illegal activities will usually render a case moot if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." <u>Mhany Mgmt., Inc. v. County of Nassau</u>, 819 F.3d 581, 603 (2d Cir. 2016) (internal quotation marks omitted). <u>See also</u> <u>Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.</u>, 528 U.S. 167, 189-91 (2000). As with the capable of repetition exception, mere speculation cannot defeat a defendant's showing that there is no "reasonable expectation" that the alleged violation will reoccur. <u>Remauro</u>, 2022 WL 1525482, at *3.

Here, the parties agree the challenged initiative has ceased. Opp. at 7. Further, there is no indication the Key to NYC vaccine mandate for patrons was allowed to expire as a result of this lawsuit. Rather, as noted, the mandate ended for reasons wholly unrelated to litigation. Addressing

---

[33] On March 5, 2022, the rolling seven-day average of confirmed and probable COVID-19 cases in New York City was 606. On May 22, 2022, that number was 4,365, and on July 5, 2022 the figure reached 3,756. *COVID-19 Data (Trends and Totals)*, NEW YORK CITY HEALTH DEPARTMENT, https://www1.nyc.gov/site/doh/covid/covid-19-data-totals.page (last accessed July 20, 2022).

mootness in the context of a similar challenge to the Key to NYC's vaccine requirement for patrons, the Court in <u>Remauro</u> recently held that the voluntary cessation exception could not apply "based on the mere possibility that defendants' challenged conduct might recur." 2022 WL 1525482, at * 3. Plaintiff's sole argument is that the defendants may reimpose the mandate at some point in the future. As the Court reasoned in <u>Remauro</u>, while the City retains the theoretical power to reinstitute the Key to NYC vaccine mandate for patrons, that does not mean that there is a "reasonable expectation" such power will be invoked. <u>See id.</u> (collecting cases reaching similar conclusions with regard to COVID-19 restrictions). And as discussed in the context of the capable of repetition exception, recent increases in COVID-19 cases have not prompted a renewal of the challenged Key to NYC provisions. <u>See Dark Storm Indus. LLC v. Hochul</u>, 20 cv 2725, 2021 WL 4538640, at *1 (2d Cir. Oct. 5, 2021) (summary order) (finding challenge to rescinded executive order moot and noting "a recent increase in COVID-19 cases has prompted neither a renewed disaster emergency declaration nor an order closing businesses").

The Court should therefore grant defendants' motion and plaintiff's claims against EEO 225—the Key to NYC initiative—should be dismissed as moot.

## V.    Leave to Amend

"Ordinarily, *pro se* plaintiffs are granted opportunities to amend their complaints freely, however, courts need not afford plaintiffs an opportunity to amend where it is clear that any attempt to amend the complaint would be futile." <u>Kimmel v. New York State Assembly</u>, No. 20 cv 1074, 2020 WL 6273975, at *3 (E.D.N.Y. Oct. 26, 2020) (citing <u>Cruz v. Gomez</u>, 202 F.3d 593, 597–98 (2d Cir. 2000)). Here, as plaintiff lacks standing, his complaint should be dismissed without prejudice. Moreover, "[a] pleading amendment would not cure plaintiff's standing deficiency." <u>Id.</u>

I therefore respectfully recommend that plaintiff should not be afforded leave to amend as any amendment would be futile. Id.

## CONCLUSION

Accordingly, it is respectfully recommended that the Court should grant defendants' motion and plaintiff's Complaint should be dismissed without prejudice.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42, 46 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated:  August 10, 2022
        Brooklyn, New York